**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Henry Kenneth Roger Siems,**
**an Individual,**

**Plaintiff,**

**vs.**

**The City of Minneapolis, a municipal corporation in Minnesota, Officer Joseph Adams (individually in is official capacity), Officer Hien Dinh (individually in his official capacity) and Does 1 through 5, inclusive,**

**Defendants.**

**Court File No.: 06-1415 (MJD/AJB)**

**DEFENDANTS' STATEMENT OF THE CASE**

## FACTS DEFENDANTS INTENDS TO PROVE

The Defendants intend to show that on April 13, 2004, Officers Joseph Adams and Hien Dinh responded to a distress call placed by Animal Control Officer Scott Whitman in the area of 36th Street East and Columbus Avenue South. Mr. Whitman had responded to a barking dog complaint in the area generated by a neighbor of the Plaintiff. Mr. Whitman attempted to audio tape the dogs as part of the procedure for investigating a barking dog complaint. The Plaintiff came out of the rear of the apartment building. The Plaintiff was visibly upset and yelled and swore at Mr. Whitman. Mr. Whitman attempted to explain the procedure to the Plaintiff who became more upset. The Plaintiff raised a clenched fist and pulled his arm back. Mr. Whitman believed that the Plaintiff was going to strike him and tried to drive away. The Plaintiff followed Mr. Whitman, threatening to strike him through the window of his vehicle.

The officers arrived after Mr. Whitman made a call for assistance. The officers observed the Plaintiff standing in front of the apartment building. The Plaintiff was reluctant to come down the steps and speak to the officers. The Plaintiff was visibly angry and he began to tell yell at the officers. As they approached, the officers observed the tighten up his shoulders. When the Plaintiff was instructed to come down the steps he backed away. Officer Adams took the Plaintiff's right arm, holding the Plaintiff near the elbow. The Plaintiff immediately attempted to pull out of Officer Adam's grip by pulling his arm away and spinning his body away from the officer. Officer Adams got behind the Plaintiff and held back his right arm and upper body. At that time the Plaintiff's right hand was clenched into a fist. Officer Dinh grabbed the left side of the Plaintiff's body. The officers made two attempts to bring the Plaintiff to the ground without success. Officer Dihn was able to grab the Plaintiff in the left shoulder in the area of his neck and upper body and force the Plaintiff to the ground. The Plaintiff was given continual verbal commands to put his hands behind his back. The Plaintiff was attempting to push Officer Dihn off his upper body and get to his knees. Officer Adams struck the Plaintiff with three or four knee strikes on the right side of his body while he continued to give commands to the Plaintiff to place his hands behind his back. The Plaintiff continued to try to push Officer Dihn off his body and get to his knees. Officer Adam's then applied an ankle lock to the Plaintiff's right ankle at which time the Plaintiff complied with the commands from the officers. The Plaintiff was arrested for obstructing legal process with force pursuant to Minn. Stat. § 609.50.

An adverse medical examination indicated that the Plaintiff suffered no permanent physical injury. A booking photograph of the Plaintiff taken at the Hennepin Adult Detention Facility indicated no observable physical injuries. The Plaintiff pled guilty to a Gross Misdemeanor Obstructing Legal Process violation related to the incident in question. Additionally, records from Animal Control indicate a history of barking dogs complaints from neighbors related to the Plaintiff's animals.

## UNRESOLVED SUBSTANTIVE ISSUES

The following substantive issues have not been resolved prior to trial:

### a. Minneapolis police officers did not use excessive force.

Allegations that law enforcement officials have used excessive force in the course of seizing a person are analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989). Essentially, the question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397.

The reasonableness of such a 'seizure' turns on:

> [a] careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interest at state. *** Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it. *** Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' *** however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity

> of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Id. at 397-98. "Not ever push or shove, even if it may later seem unnecessary in the peace of a judge's chambers amounts to an unconstitutional use of force." Greiner v. City of Champlin, 816 F. Supp. 528, 542 (D. Minn. 1993) affirmed in part and remanded in part, 27 F.3d 1346 (8th Cir. 1994) citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973), cert. denied, 414 U.S. 1033. In Foster v. Metropolitan Airports Commission, 914 F.2d 1076 (8th Cir. 1990), the court held that minor or insignificant injuries are not constitutionally unreasonable. Further, when an arrestee flees or resists, some use of force by the police is reasonable. Greiner 27 F.3d at 1355, citing Foster v. Metropolitan Airports Commission, at 1082.

In Foster, the plaintiff testified that he was pulled out of his car, pushed against a wall twice and that handcuffs were applied unnecessarily tightly around his wrists. Foster further claimed that he had suffered nerve damage in his arms are a result of being handcuffed although he presented no medical records indicating that he suffered any long term injury as a result of the handcuffs. The court held that Foster's allegations of pain without some evidence of more permanent injury were insufficient to support of his claim of excessive force. Foster, 914 F.2d at 1082.

In dealing with the Plaintiff, the officers used only the amount of force minimally necessary to subdue and control the Plaintiff. The actions of the officer were reasonable and lawful.

**b. The Plaintiff was not assaulted or battered by Minneapolis police officers.**

An assault is a wrongful threat, more than words alone, with the present ability to carry such threat into effect and which causes a reasonable apprehension of immediate harm or offensive contact. Mere words of threat alone do not constitute an assault. The use of threatened force by a police officer is lawful if it is a reasonable use of force when used in effecting an arrest. See, Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990)

A battery is an intentional unpermitted offensive contact with another. Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980). Because a police officer may come in contact with an individual for certain purposes, the use of force by a police officer must be excessive to constitute battery. Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984)(citing Paradise, 297 N.W.2d at 155). Thus, excessive or unreasonable force is an element of battery when the accused is a police officer effecting a lawful arrest. Id. The plaintiff has the burden of proving every element of the action. Id.

As discussed above, the officer's physical force on Plaintiff was reasonable under the totality of the circumstances. Reasonable use of force does not constitute an assault or a battery.

**c. The City of Minneapolis did not have a pattern and practice of illegal conduct.**

Under §1983, it is well established that a municipality cannot be held liable for its employees' allegedly unconstitutional acts under a theory of respondeat superior. Monell v. Department of Soc. Serv. of City of N.Y., 436 U.S. 658 (1978); Pembaur v. Cincinnati, 475 U.S. 69, 79 (1986). Rather, a municipality may be liable only if the plaintiff can

show that an official policy of the government is "the moving force of the [alleged] constitutional violation." Monell, 436 U.S. at 694. Generally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom. City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985). By the same token, a single deviation from a written, official policy does not provide a conflicting custom or usage. Williams-El v. Johnson, 872 F.2d 224, 230 (8th Cir. 1989), cert. denied, 493 U.S. 824 (1989). To hold a municipality liable under §1983, a plaintiff must establish that the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's officers; or the plaintiff must establish that a constitutional deprivation was visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels. Handle v. City of Little Rock, 772 F.Supp. 434, 437 (E.D. Ark. 1991). Courts are to focus only on the constitutionality of specific applications of a challenged policy as applied to specific factual circumstances. Id. at 438.

In Monell v. Department of Social Serv. of the City of N.Y., 436 U.S. 658 (1978), the Supreme Court held that municipal liability under §1983 may be imposed only where the municipality itself "causes" the constitutional violation. The Court reasoned that §1983, as originally enacted, imposed liability only if a person subjected, or caused to be subjected, another person to the deprivation of federally protected rights. Monell, 436 U.S. at 691. By specifically imposing liability for the torts of another person, if one

"caused" the tort to be committed, the statutory language suggests that Congress "did not intend §1983 liability to attach where such causation was absent". Id. at 692.

The Monell Court concluded that Congress, in enacting §1983, did not intend that municipalities be held vicariously liable for the tortious conduct of their employees. It is only when the "execution of a government's policy or custom . . . inflicts the injury" that the municipality may be held liable under §1983. Id. at 694.

Given the importance of distinguishing between direct and vicarious liability under §1983, the Supreme Court has repeatedly stressed the need to find a direct causal connection between municipal conduct and the constitutional deprivation. See, e.g., City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985)(requiring "affirmative link" between municipal policy and constitutional violation); Polk County v. Dodson, 454 U.S. 312 (1981)(municipal policy must be the "moving force" behind constitutional deprivation).

In order to establish a governmental custom of failing to receive, investigate and act upon complaints, a plaintiff must prove:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policy making officials after notices to the officials of that misconduct; and

(3) That plaintiff was injured by acts pursuant to the governmental entity's custom i.e. that the custom was the moving force behind the constitutional violation.

Thelma A. by Delores A. v. Board of Educ., 934 F.2d 929, 932-33 (8th Cir. 1991).

For their § 1983 claim against the City, the Plaintiff relies exclusively on the facts and circumstances of the alleged incident. As to that, the Supreme Court has further held that, absent a written or official unconstitutional municipal policy, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell." Tuttle, 471 U.S. at 823-24.

To prevail, Plaintiff must show that the City had notice of prior acts of police misconduct and deliberately failed to act on this knowledge. See, Harris v. City of Pagedale, 821 F.2d 499, 504 (8th Cir. 1987), cert. denied, 484 U.S. 1079 (1988). A municipal policy is not unconstitutional if it might permit unconstitutional conduct in some circumstances; it is unconstitutional only if it requires its officers to act unconstitutionally. Handle v. City of Little Rock, 772 F. Supp. 434, 438 (E.D. Ark. 1991).

Even if the practice of officers on the street is elevated to a "policy", the Supreme Court has stated that "[t]he fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy Monell's requirement that the particular policy be the 'moving force' behind a constitutional violation." Tuttle, 471 U.S. at 824 n.8. There must at least be an affirmative link between the policy alleged and the particular constitutional violation at issue. Id. The policy must be the "moving force" behind the conditional violation. Monell, Id.. Plaintiff's claim lacks this causal link. Officers are free to exercise their discretion to assist customers. The fact that the two involved officers did not recognize this instance as a chance to potentially do that, does not establish causation.

Similarly, the Eighth Circuit has held that where a §1983 claim is based on a municipality's alleged failure to prevent misconduct by its employees, the City is liable only where municipal officers can be shown to be directly responsible for the improper actions of their subordinates. Harris, 821 F.2d at 504 (citing Wilson v. City of North Little Rock, 801 F.2d 316, 322 (8th Cir. 1986)). As stated earlier, the identified policy must require the officers to act unconstitutionally. Handle, Id.. There is no such affirmative link present in this case.

**d. Defendants are entitled to official immunity on the state law claims.**

Under Minnesota law, a public official is automatically entitled to official immunity from state law claims when he or she is charged by law with duties that require the exercise of judgment or discretion. Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990); Elwood v. Rice County, 423 N.W.2d 671, 677 (Minn. 1988). Generally, police officers are classified as discretionary officers entitled to official immunity. Johnson, 453 N.W.2d at 42. State law immunity rests on the same rationale as federal qualified immunity: courts must insure that the threat of suit does not inhibit public officials' exercise of discretion in discharging their duties. Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991); Watson v. Metropolitan Transit Commission, 553 N.W.2d 406, 414 (Minn. 1996).

Like the federal doctrine of qualified immunity, official immunity is broadest when police act under emergency situations and high-risk circumstances. Pletan v. Gaines, 494 N.W.2d 38 (Minn. 1992) (broad immunity because community cannot expect its police officers to do their duty and then to second-guess them when they do it);

McGovern v. City of Minneapolis, 480 N.W.2d 121, 126 (Minn. App. 1992). However, an emergency situation is not necessary for official immunity to apply. Greiner v. City of Champlin, 816 F. Supp. 528, 546 (D. Minn. 1993), aff'd 27 F.3d 1346 (8th Cir. 1994); Watson, 553 N.W.2d at 414.

Official immunity is defeated only by proof that the officer committed a willful or malicious wrong. Watson, 553 N.W.2d at 414; Johnson v. State, 553 N.W.2d 40, 46 (Minn. 1996). This requires proof of the officer's "intentional doing of a wrongful act without legal justification or excuse." Rico, 472 N.W.2d at 107. A plaintiff must do more than allege malice or willfulness: he must present specific facts showing that the official knew that what he or she was doing lacked legal justification. Reuter v. City of New Hope, 449 N.W.2d 745, 751 (Minn. App. 1990); Frank's Livestock & Poultry Farm, Inc. v. City of Wells, 431 N.W.2d 574, 578 (Minn. App. 1988). The measure of proof of "malice" that defeats official immunity resembles the measure of proof necessary to defeat federal qualified immunity: the plaintiff must prove that the defendant knowingly violated clearly established law at the time he acted:

> [T]he wilful or malicious wrong exception to official immunity ... does not impose liability merely because an official intentionally commits an act that a court or a jury subsequently determines is a wrong. Instead, the exception anticipates liability only when an official intentionally commits an act that he or she then has reason to believe is prohibited.

Rico, 472 N.W.2d at 107 (emphasis in original). A conclusory allegation of malice will not defeat the immunity. Greiner, 816 F. Supp. at 546 (citing Krypke v. Burlington N. R.R., 928 F.2d 285, 287 (8th Cir. 1991).

**e. Defendants are entitled to qualified immunity on plaintiffs' constitutional claims.**

The doctrine of federal qualified immunity applies to shield municipal officials from personal liability for federal claims "unless the officials' conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known." Cornell v. Woods, 69 F.3d 1383, 1390 (8th Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to find a clearly established right, "the contour of the violated right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)). The analysis "focuses on the objective legal reasonableness of an official's acts." Harlow, 457 U.S. at 819. Whether qualified immunity applies is a question of law to be decided by the court. Ludwig, 54 F.3d at 470 (citation omitted); Angarita v. St. Louis County, 981 F.2d 1537, 1548 n. 18 (8th Cir. 1992).

The applicability of qualified immunity is analyzed in three parts: first, has plaintiff asserted a violation of a constitutional right; second, was the applicable law pertaining to the constitutional right in question clearly established at the time of the violation; and, third, if the officers violated the clearly established law, have defendants established that no material issues of fact remain as to the objective reasonableness of the

officers actions in light of the law and information they possessed at the time. Hall v. Lombardi, 996 F.2d 954, 958 (8th Cir. 1993).

Immunity depends first upon proper definition of the legal rule that the official allegedly violated. "Clearly established law" normally requires the existence of cases applying the law to the precise factual circumstances the defendant faced when he acted. Anderson, 483 U.S. at 639-40. Plaintiff bears the burden of showing that defendant officers violated clearly established law. Greiner v. City of Champlin, 816 F. Supp. 528, 543 (D. Minn. 1993) affirmed in part and remanded in part, 27 F.3d 1346 (8th Cir. 1994). The application of qualified immunity as a defense to allegations of police misconduct may be argued at trial or after judgment. Rellergert v. Cape Girardeau County, 924 F.2d 794, 796 (8th Cir. 1991); Quezada v. County of Bernallilo, 944 F.2d 710, 718 (10th Cir. 1991); Accord Salmon v. Schwartz, 948 F.2d 1331 (10th Cir. 1991). If genuine issues of material fact prevent the resolution of the immunity issue at summary judgment, the court may determine the immunity defense after the facts have been developed at trial. Act Up v. Bagley, 971 F.2d 298 (9th Cir. 1992).

Special interrogatories on the basis for qualified immunity may, also, be submitted to the jury. The legal decision of the application of the facts must, however, be reserved by the court. Bendiburg v. Dempsey, 19 F.3d 557 (11th Cir. 1994); King v. Macri, 800 F. Supp. 1157, 1165 (S.D.N.Y. 1992). Special interrogatories related to the qualified immunity defense are not improper. Lampkins v. Thompson, 337 F.3d 1009, 1014 (8th Cir. 2003). The jury’s role is limited to determining whether the underlying facts are as the plaintiff has alleged or proved. In light of the jury's findings, the court should then

determine the legal question qualified immunity. Littrell v. Franklin, 388 F.3d 578, 585 (8th Cir. 2004)

It is appropriate for this court to consider the application of the immunity defenses asserted by the Defendants upon Motion for Judgment as a Matter of Law. In the alternative, the court may present factual determinations to the jury via special interrogatory.

## UNRESOLVED EVIDENTIARY ISSUES

The Defendants have not yet been served with the Plaintiff's Witness and Exhibit Lists. The Defendants can only speculate about the nature of any proposed testimony or exhibits. The Defendants anticipate that the Plaintiff may propose testimony or exhibits subject to the following evidentiary issues.

### a. Personnel files, discipline files and testimony based upon those files are not admissible.

The Plaintiff did not request personnel files or disciplinary files from the Defendants in the course of discovery. Should the Plaintiff may seek to introduce portions of the personnel or disciplinary files of Defendant officers, the Defendants assert that such material in not admissible.

Evidence of past misconduct to prove character and propensities is inadmissible under Rule 404(a) of the Federal Rules of Evidence. See, Hopson v. Fredericksen, 961 F.2d 1374, 1379 (8th Cir. 1992). In addition, Rule 403 would exclude this evidence due to its unfair prejudice and inflammatory effect upon the jury. The evidence would be irrelevant and highly prejudicial: it would tempt the jury to consider evidence of the

officer's past misconduct as an indication of their propensity to be violent. The jury could conclude that the officer acted in conformity with this character when dealing with the Plaintiff.

Rule 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action and conformity therewith. In Morgan v. City of Marmaduke, Ark., 958 F.2d 207 (8th Cir. 1992), a police officer crashed his vehicle into plaintiff's motorcycle during a chase. Plaintiff attempted to offer into evidence two prior incidents in which the defendant police officer used his patrol car to stop a fleeing motorcyclist. The trial court allowed evidence of one prior incident, but held the second incident inadmissible. On appeal, the Eighth Circuit ruled that both prior incidents were inadmissible under Fed. R. Evid. 404(b).

Section 1983 excessive force claims arising in the context of an arrest must be analyzed under the Fourth Amendment's reasonableness standard. Graham v. Connor, 490 U.S. 386 (1989). This standard is entirely objective, and "an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intention make an objectively unreasonable use of force constitutional." Morgan, 958 F.2d at 211 n.2, (quoting Graham, 490 U.S. at 397). The Eighth Circuit reasoned that, even if one were to assume that the evidence of the prior incident was otherwise admissible, it had no probative value concerning the claim of excessive force. It also had a prejudicial effect against the individual officer and should have been excluded under Fed. R. Evid. 403. Morgan, 958 F.2d 207.

Under the Graham Fourth Amendment "objective reasonableness" standard the officer's state of mind is irrelevant. Therefore evidence of other issues in which the officer used excessive force may not be introduced on the issue of intent. In Robinson v. City of St. Charles, Mo., 972 F.2d 974 (8th Cir. 1992), plaintiffs sought to introduce the individual officers' personnel files as evidence of prior bad acts and the municipality's knowledge of those acts. The district court ruled the files inadmissible against the individual officers and subsequently excluded the evidence against the municipality. Following the Fourth Amendment's standard of objective reasonableness, the Eighth Circuit held that the police officers' personnel records, containing notations of citizens complaints and other civil lawsuits, were not admissible to show whether the officers acted maliciously and sadistically for purposes of causing harm.

Any evidence sought to be introduced against Defendants is intended to show that they arguably had a propensity to act as violent persons or that they have a tendency to use more force than is reasonably necessary. The admission of such evidence clearly violates Rule 404(b)'s ban against other act evidence to show character or prior conduct. In Hopson, the court stated that "showing a 'proclivity to engage' in conduct is the same as showing a propensity to engage in conduct and both are prohibited by [Rule 404(b)]". Hopson v. Fredrickson, 961 F.2d at 1379. Similarly, in Donald v. Rast, 927 F.2d 379 (8th Cir.) *cert. denied,* 502 U.S. 827 (1991) it was held that evidence that an officer had been reprimanded on several occasions was properly excluded. In Berkovich v. Hicks, 927 F.2d 1018 (2nd Cir. 1991) prior complaints against the police officer to show an aggravated state of mind was held to be improper character evidence.

## UNRESOLVED PROCEDURAL ISSUES

None are anticipated by the Defendants at this time.

## ESTIMATED LENGTH OF TRIAL

The Defendants estimate the length of time for the entire trial, including jury selection and jury charge to be four days.

Dated: January 15, 2008

JAY M. HEFFERN
City Attorney
By

s/Timothy S. Skarda

TIMOTHY S. SKARDA (10176X)
TRACEY N. FUSSEY (0311807)
Assistant City Attorneys
Attorneys for Defendants
300 Metropolitan Centre
333 South Seventh Street
Minneapolis, MN 55402-2453
(612) 673-2553