**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Henry Kenneth Roger Siems,**
**an Individual,**

**Plaintiff,**

**vs.**

**The City of Minneapolis, a municipal Corporation in Minnesota, Officer Joseph Adams (individually in his Official capacity), Officer Hien Dinh (individually in his official capacity) And Does 1 through 5, inclusive,**

**Defendants.**

**Court File No.: 06-1415 (MJD/AJB)**

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' OPPOSITION MEMORANDUM**

---

Plaintiff, Mr. Siems, respectfully submits this Memorandum in Response to Defendants' Memorandum opposing his Rule 60(b) Motion and requests that this Court reconsider its January 25, 2008, Order dismissing his case. Mr. Siems takes up each of Defendants' arguments in turn, and again emphasizes that considerations of equity and fairness weigh strongly in favor of granting his motion. In particular, Mr. Siems reiterates that he was entirely and reasonably uninformed of the actions of his attorney that resulted in the dismissal, and that Defendant would in no way be prejudiced should this Court grant his Motion

## I. RULE 60(b) STANDARD

Defendant's interpretation of the 'excusable neglect' standard is much too narrow given the abundance of case law interpreting and applying the phrase, especially in light of the Supreme Court's guidance on the issue and the Eighth Circuit's subsequent interpretation. Mr. Siems referred the Court to *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S.

380 (1993), in his original Memorandum. In *Pioneer*, the Supreme Court noted that the determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding party's omissions." Id. at 395. The Eighth Circuit has adopted the *Pioneer* Court's standard for purposes of Rule 60(b), stating that "[t]he relevant circumstances include 'the danger of prejudice to [the non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Feeney v. AT &E*, 472 F.3d 560, 562-63 (8th Cir. 2006). As Defendants point out (albeit somewhat circuitously[1]), excusable neglect is not defined in the rules, and a determination should be made by examining the commonsense meaning of the words applied to the facts. *Buckley v. United States*, 382 F.2d 611, 614 (10th Cir. 1967). In other words, the application of Rule 60(b) involves a fact-sensitive process. Accordingly, the guidance provided by the Eighth Circuit in *Feeney* should outweigh the handful of fact-specific holdings contained in the cases from other jurisdictions cited by Defendants.

For instance, *Buckley* involved an attorney who failed to meet a deadline for filing an appeal because the court clerk failed to notify her of entry of judgment. The court there found that the district court had not abused its discretion in finding the attorney's level of culpability something beyond excusable neglect based on the fact that Fed. R. Cr. P. 37(a)(2), which was the rule upon which the attorney pleaded excusable neglect, also contained a provision stating clearly that "[l]ack of notice of entry by the clerk does not . . . authorize the court to relieve a

[1] Circuitous in so far as the case relied on by Defendants for the propositions that "excusable neglect is not defined in the rule" and that a "determination should be made by examining the commonsense meaning of the words applied to the facts" is a case interpreting the language of Fed. R. Cr. P. 37(a)(2), which does contain the term "excusable neglect."

party for failure to appeal within the time allowed." Id. at 614. In the present case, there is no such provision in Rule 60(b) explicitly excluding the conduct of Plaintiffs' former attorney.

*In re Guidant Corp. Implantable Defibrillators*, 496 F.3d 863 (8th Cir. 2007), cited by Defendant, is also factually quite distinct from the present case. There, in a class action suit involving nearly 1,400 plaintiffs, two plaintiffs (not their attorneys) failed to provide the court with current email addresses and failed to complete required medical questionnaires. *Id.* at 867. In addition the *Guidant* court took into account such equitable considerations as the danger of prejudice to the defendant, negative impact on the proceedings and the other plaintiffs, the bad faith of the plaintiffs, and the reason for delay. *Id.* at 867. Here, equity weighs in favor or granting Mr. Siems' motion.

Defendants cites *Maryland Cas. Co. v. Conner*, 382 F.2d 13, 17 (10th Cir. 1967) for the proposition that an attorney's preoccupation with other matters is not excusable neglect. This case is likewise distinguishable. First, it is a case involving applying Fed. R. Civ. P. 73(a), which also contains an "excusable neglect" provision regarding untimely appeals. However, Rule 73(a) also carries with it the following language from a prior amendment, which is now contained in an advisory committee comment on the rule:

> The original rule authorized the district court to extend the time for appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed 'upon a showing of excusable neglect based upon a failure of a party to learn of the entry of the judgment * * *.' The exception numbered (2) eliminates the phrase 'based upon a failure of a party to learn of the entry of the judgment' and thus empowers the district court to extend the time upon a showing of excusable neglect of any kind. In view of the ease with which an appeal may be perfected, no reason other than failure to learn of the entry of judgment should ordinarily excuse a party from the requirement that the notice be timely filed. But the district court should have authority to permit the notice to be filed out of time in extraordinary cases where injustice would otherwise result.

*Id.* at 15 (Emphases added). "Excusable neglect" in the Rule 73(a) context comes loaded with two standards depending on why the appeal is late, one especially high only as a result of the specific history of the Rule. *Id.* This uniquely high standard is of little value in evaluating Plaintiff's former counsel's action in the Rule 60(b) context.

Defendants' reliance on *Ben Sager Chemicals, Int'l v. E. Targosz & Co.*, 560 F.2d 805 (7th Cir. 1977) is also misplaced. There the court denied relief under Rule 60(b)(1) because the Defendant could not make a sufficient evidentiary showing that former counsel had been preoccupied with personal matters. *Id.* at 809. While this case perhaps reveals the evidentiary standard a court should apply in evaluating a Rule 60(b)(1) motion, it does assist in defining "excusable neglect" as Defendants contend.

The other two cases cited by Defendant are distinguishable and of little instructional value to this case. *Fernandes v. U.S.*, 169 F.R.D. 372 (D.Kan. 1996), (analyzing a local rule, D.Kan. Rule 6.1(a), granting the district court discretion to extend a party's response); *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1044-45 (8th Cir. 2005), (affirming district court's finding that attorney's busy schedule with nothing more does not amount to excusable neglect).

In short, the general instruction supplied by the Supreme Court in *Pioneer* regarding the proper standard to judge "excusable neglect" under Rule 60(b), coupled with the *Feeney* court's subsequent interpretation and refinement, provides the preferable and more manageable standard by which to determine excusable neglect in a given case. This equitable and flexible standard lies in stark contrast to the standard Defendants attempt to develop by picking and choosing among a handful of cases, some which do not even address Rule 60(b), and all whose holdings are distinguishable from the present case.

## II. APPLYING THE FEENEY FACTORS, PLAINTIFF'S RULE 60(b) MOTION SHOULD BE GRANTED

The Eighth Circuit has established the following four factors to consider when determining when conduct counts as excusable neglect for Rule 60(b) purposes: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; (4) whether the movant acted in good faith. *Feeney*, 472 F.3d at 562-63; see also *Guidant*, 496 F.3d at 867. Each factor will be addressed in turn.

### 1. The Danger of Prejudice to the Non-Moving Party

Defendants cite *Guidant* and attempt to draw parallels between that case and this one. From the outset the facts of *Guidant* are distinguishable from those of this matter concerning the prejudice factor – there, defendants had before them the task of collecting and assembling medical and other data from 1,400 plaintiffs; by not providing requested information, the two noncompliant plaintiffs caused a delay of nearly six months. *Guidant*, 496 F.3d at 866. In assessing the prejudice to defendant, the *Guidant* court went beyond a consideration of mere delay, and concluded that because the defendant, then working under the significant time pressures associated with a class action 1,400 plaintiffs, would be significantly prejudiced in its ability to put together an adequate defense. *Id.*

In the present case, no such prejudice exists. Mr. Siems answered Defendant's Interrogatories and identified all individuals who had knowledge about the claims – Defendants cannot claim they would be "surprised" by any witnesses at trial. (See Plaintiff's Interrogatory Responses, Rasmus Aff. of Sept. 18 at Exhibit 1.) Defendants, apparently conducted an adverse medical examination – so again, they would not be surprised by medical evidence at trial. (See Amended Notice of Medical Examination, id. at Exhibit 2.) Defendants made the choice not to

depose Mr. Siems or any other witnesses – Mr. Siems is not responsible for those decisions. Defendants have not pointed to any evidence that Mr. Siems would or could present at trial, despite the lack of pretrial submissions, that would have prejudiced Defendants.

On the prejudice factor, *Mann v. Lewis*, 108 F.3d 145 (8th Cir. 1997), is more to the point factually than *Guidant*. As noted in Mr. Siems initial Memorandum, plaintiff's attorney in *Mann* had "failed in all respects to comply with the pre-trial order," which had required the parties to meet a number of requirements at least ten days before trial. *Id.* at 147. While the District Court in Mann dismissed the case under Fed. R. Civ. P. 41(b), a rule premised in part on the idea that that the rights of an opposing party should not suffer prejudice as a result of the opposing party's dilatory conduct, *see id.* at 147, the Court of Appeals for the Eighth Circuit reversed, in part because defendants had not been sufficiently prejudiced to warrant a dismissal with prejudice. *See Id.* at 147-48. Mr. Siems' former counsel's conduct in the present case is comparable to that of plaintiff's attorney in *Mann*, as are the consequences of a dismissal with prejudice for the respective Plaintiff. Accordingly, *Mann* is instructive on what constitutes a level of prejudice to the non-movant which may warrant refusing relief from a dismissal with prejudice. In both cases, sufficient prejudice is lacking.

**2. The Length of Delay and Its Impact on Judicial Proceedings**

Defendant identifies the important policy behind this factor: timely submissions allow the court to evaluate its docket and allows the parties to prepare for trial in an expeditious and efficient manner. Again, because of the nature of the case, the delay suffered by Defendants would be modest, as the case involves limited discovery and the Defendants were notified of Mr. Siems witnesses through written discovery. The Court could have adopted Defendants' proposed jury instructions and prevented Mr. Siems from brining *motions in limine*. This would

have addressed both the prejudice and the delay factors. While hardship to a movant imposed by refusing its Rule 60(b) request is not a factor under the *Feeney* analysis, the Supreme Court in *Pioneer* advised that the determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding party's omissions." *Pioneer*, 507 U.S. at 395. An equitable examination of all relevant circumstances could not be complete without considering the consequences of a denial of relief to the movant. In the case of a dismissal with prejudice, where the movant risks being forever barred from having his day in court, the consequences of denial are severe. All the more so here, as Mr. Siems seeks to have the Court address the serious physical, psychological, and constitutional injuries he has sustained at the hands of the State.

**3. The Reason for the Delay, Including Whether it was Within the Reasonable Control of the Movant**

The facts in the present case suggest that Mr. Siems' former counsel failed to meet court deadlines. Mr. Siems understands that this Court was rightfully frustrated. However, the circumstances giving rise to the delay within the control of Mr. Siems' former counsel, and the responsibility for such delay should fall with her. In considering whether this neglect was excusable for purposes of Rule 60(b), the Court, in making its "equitable examination of all relevant circumstances surrounding a party's omissions", *id.* at 395, should give proper significant weight to the fact that Mr. Siems, as distinguished from his former counsel, was entirely innocent in his former counsel's failure to communicate with the court and meet the deadlines imposed. Such equitable considerations were important concerns for the *Mann* and *Moore* Court's findings that dismissal with prejudice was an unduly harsh punishment for the

transgressions of the attorney alone. *Mann*, 108 F.3d at 147-48; *Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1193 (8th Cir. 1976).[2]

**4. Whether the Movant Has Acted in Good Faith**

Defendants rely in large part on *Guidant* for their analysis of the Good Faith requirement. In *Guidant*, the Eighth Circuit noted that while the conduct may not have been willful disobedience, the conduct there amounted to a "blatant disregard for the deadlines and procedure imposed by the Court." *Guidant*, 496 F.3d at 867. The Eighth Circuit noted that a factor in its decision was the fact that counsel did not attempt to mitigate any harm or inconvenience, and the eventual information which was supplied by counsel was incomplete. *Id.* While such action may not amount to intentional disobedience of court order, this blatant disregard still carries with it an element of scienter essential to any definition of "bad faith," and which is completely lacking in the present case.

Putting aside the wholly reasonable and innocent conduct of Mr. Siems himself, the conduct of his former counsel does not amount to a showing of intentional conduct or bad faith. There is no evidence in the record to suggest that counsel's failures to communicate and meet court deadlines were the product of anything more than negligence in maintaining a busy schedule. As soon as counsel discovered what she had negligently caused, she wrote a letter to the Court acknowledging and apologizing for her actions. Unlike counsel in *Guidant*, once the shortcomings were brought to counsel's attention, counsel here took action and attempted to remedy the situation for her client. This is in contrast to the sort blatant disregard which the plaintiffs exhibited in *Guidant* by knowingly delaying proceedings for nearly six months, and then even after receiving notice from the court of their negligence, continuing their irresponsible conduct. *Id.* at 866.

[2] Plaintiff's original Memorandum addresses this point in greater detail, and the argument will not be rehashed here.

## III. PLAINTIFF'S MOTION FOR 60(b) RELIEF WAS FILED WITHIN A REASONABLE TIME

Here, the time period between the district court's dismissal with prejudice and Plaintiff's Rule 60(b) Motion does not constitute unreasonable delay. Plaintiff had to retain and begin afresh with new counsel. Rule 60(b) applies a one-year outer bracket on what can constitute a reasonable amount of time to bring a motion. Plaintiff brought this motion well within this timeframe.

Defendants claim that the Courts apply a thirty (30) day time limitation for such 60(b) actions. This is misleading. In *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457 (8th Cir. 2000), the court imposed a thirty day time limit on 60(b) Motions in response to mistakes, etc, of the *court*, not mistakes, etc, by a *party*. *Id.* at 461. This makes sense as a one-year time limit applied to mistakes of the court would essentially nullify the thirty day appeal time frame. *See Id.*

Mr. Siems did not discover his case had been dismissed until the appeal deadline and nearly passed – he and his counsel had to act fast to perfect the appeal. Under this circumstance, it was appropriate to for him to pursue the appeal prior to brining this motion.

## IV. CONCLUSION

For all of the foregoing reasons, and those additional reasons stated in Plaintiff's original Memorandum in Support of its Rule 60(b) Motion, Plaintiff respectfully requests this Court to exercise the discretion it has under Rule 60(b) to relieve Plaintiff from this Court's entry of dismissal with prejudice on the underlying matter.

Respectfully submitted,

**RASMUS LAW OFFICE, LLC**

Dated: September 19, 2008

/s/ Dan Rasmus __________
Dan Rasmus (#0260289)
333 South 7th Street, Suite 3020
Minneapolis, MN 55402
Phone: (612) 786-0321

**ATTORNEY FOR PLAINTIFF**